MERRILL LYNCH AND COMPANY ET AL. *v.*
CITY OF WATERBURY
(12097)

DUPONT, C. J., HEIMAN and FREEDMAN, Js.

Argued December 7, 1993—decision released April 5, 1994

*Michael P. Kaelin,* with whom, on the brief, were *Taggart D. Adams* and *George C. Springer, Jr.,* for the appellants (plaintiffs).

*Thomas K. McDonough,* assistant corporation counsel, for the appellee (defendant).

FREEDMAN, J. The plaintiffs, Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith (MLPF & S), Merrill Lynch Asset Management, Inc., Frederick M. Genung, and Edmund C. Hyland, appeal from the decision of the trial court staying the arbitration of the claims ruled arbitrable until after the completion of the judicial proceedings involving the nonarbitrable claims.[1] The sole issue presented is whether a trial court, after finding certain claims to be arbitrable and compelling arbitration as to those claims, may then stay the arbitration proceedings until the nonarbitrable claims have been resolved by the court.

This appeal stems from a dispute between the city of Waterbury and the plaintiffs regarding the purchase of Colonial Diversified Zero Coupon Bonds with funds from the city's retirement account. The procedural history of this case is complicated. On April 16, 1991, the city, the defendant herein, commenced an action against all of the plaintiffs in this case (first action).[2]

---

[1] The trial court did the following three things: it granted the plaintiffs' motion to compel arbitration as to the plaintiffs MLPF & S and Genung, it granted the plaintiffs' motion to stay the judicial proceedings as to the plaintiffs MLPF & S and Genung, and it stayed the claims ruled arbitrable until the completion of the judicial proceedings involving the nonarbitrable claims.

[2] The plaintiffs in this case are the defendants in the first case. In this opinion we refer to them as the plaintiffs. The city of Waterbury is the plaintiff in the first case and the defendant in this case. We refer to it in this opinion as the city.

The amended complaint contained five counts. The first three counts were directed against the plaintiffs, while the two remaining counts concerned other parties not involved in this appeal. On May 30, 1991, in the first action, the plaintiffs herein filed a motion to stay the judicial proceedings pursuant to General Statutes § 52-409[3] and 9 U.S.C. § 3,[4] and a motion to compel arbitration pursuant to General Statutes § 52-410[5] and 9 U.S.C. § 4.[6]

---

[3] General Statutes § 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration."

[4] Section 3 of title 9 of the United States Code provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

[5] General Statutes § 52-410 provides in pertinent part: "(a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law. . . .

"(c) The parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the application, according to the rights of the parties."

[6] Section 4 of title 9 of the United States Code provides in pertinent part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitra-

On November 1, 1992, before the trial court made its decision in the first action, the plaintiffs commenced this action pursuant to § 52-410 seeking to compel the city to arbitrate certain claims.[7] It is from this second action that the plaintiffs presently appeal. The trial court issued its memorandum of decision in the first action on November 30, 1992, finding that the plaintiffs had not filed a separate writ of summons and complaint as required by § 52-410. The trial court further found that *KND Corp.* v. *Hartcom, Inc.,* 5 Conn. App. 333, 336–37, 497 A.2d 1038 (1985), sanctioned the use of a § 52-409 motion to compel arbitration when the issue of arbitration was injected into a case by a defendant. The trial court went on to find that the arbitration clause at issue applied only to the claims against MLPF & S and Genung, and, therefore, granted the motion to compel arbitration and the motion to stay the judicial proceedings as to those two parties only. The trial court, however, then went on to stay the arbitration of the claims ruled arbitrable until the completion of the judicial proceedings of the nonarbitrable claims. On December 18, 1992, the plaintiffs appealed from the decision in the first action, and, on December 23, 1992, they filed a motion in the trial court to consolidate the two actions. The trial court granted the motion to consolidate the two actions and ordered

tion proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . ."

[7] The plaintiffs commenced this action as a result of our Supreme Court's decision in *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.,* 223 Conn. 761, 613 A.2d 1320 (1992), released on September 1, 1992, which held that a decision granting a stay of judicial proceedings in response to a motion filed pursuant to General Statutes § 52-409 is interlocutory and is not a final judgment for the purpose of an appeal. A decision in response to an action filed pursuant to General Statutes § 52-410, however, was held to be a final judgment from which either party may appeal.

that its decision issued in the first action apply as well to this action.

On January 26, 1993, the plaintiffs filed this appeal from the decision of the trial court as it applied to this action. The city filed motions to dismiss both appeals on December 24, 1992, and February 5, 1993, respectively. On March 17, 1993, we granted the motion to dismiss the appeal from the first action for lack of a final judgment and denied the motion to dismiss the appeal from this action.

The question now before us is whether the trial court, after granting the motions to compel arbitration and to stay the judicial proceedings with respect to MLPF & S and Genung, improperly stayed the arbitration pending the termination of the judicial proceedings involving the other parties. It is important to note at the outset the issues that the plaintiffs are not challenging, which are, therefore, not before this court. The plaintiffs do not challenge the trial court's determination as to what claims are arbitrable and what claims are nonarbitrable, nor do they appeal the stay of judicial proceedings with respect to MLPF & S and Genung. They challenge only the propriety of the trial court's decision to stay the arbitration proceedings.

We are concerned with only the second action, the action to compel arbitration pursuant to § 52-410.[8] The trial court found that the parties had agreed that their dealings involved interstate commerce and, thus, that the Federal Arbitration Act (FAA); 9 U.S.C. §§ 1 through 14; was applicable. In *Volt Information Sciences, Inc.* v. *Stanford University,* 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), the United States Supreme Court held that while the FAA preempts the application of state laws that ren-

---

[8] See footnote 5.

der arbitration agreements unenforceable, it does not preempt the application of state law in a case where the parties have chosen in their arbitration agreement to abide by the law of a particular state. Id., 472. "[B]ecause [t]he thrust of the federal law is that arbitration is strictly a matter of contract . . . the parties to an arbitration agreement should be at liberty to choose the terms under which they will arbitrate." (Citations omitted; internal quotation marks omitted.) Id. Thus, in a situation where "the parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be inimical to the policies underlying state and federal arbitration law . . . because it would force the parties to arbitrate in a manner contrary to their agreement." (Citations omitted; internal quotation marks omitted.) Id.

Here, the contract between the parties provided that it was to be governed by and construed in accordance with the laws of the state of New York. At trial neither party proceeded under the procedural laws of New York but chose instead the procedural laws of Connecticut. Where the parties try a case under a particular theory and the trial court decides the case under that theory, upon review, we will also apply that same theory. See *Newington* v. *Mazzoccoli,* 133 Conn. 146, 151–52, 48 A.2d 729 (1946); *Brierley* v. *Johnson,* 131 Conn. 675, 679, 42 A.2d 34 (1945); *Freund* v. *Burns,* 131 Conn. 380, 388, 40 A.2d 754 (1944); *Ohlin* v. *Kowner,* 96 Conn. 394, 401, 114 A. 117 (1921); *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 364–65, 85 A. 636 (1912); *Staub's Appeal from Probate,* 66 Conn. 127, 134, 33 A. 615 (1895); *Gemme* v. *Goldberg,* 31 Conn. App. 527, 534, 626 A.2d 318 (1993): W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 42. The plaintiffs filed their motions to compel and stay, in the first action, pursuant to General Statutes

§§ 52-409 and 52-410 as well as to 9 U.S.C. §§ 3 and 4.[9] In the action that is the subject of this appeal, the plaintiffs proceeded under § 52-410 only. The trial court found that both parties "seemingly have agreed that their dealings affect interstate commerce and come under the . . . FAA" and the trial court decided the case under both the FAA and Connecticut law.

We, however, need not address the applicability of 9 U.S.C. §§ 3 and 4, as this action was brought pursuant to § 52-410.

Section 52-410 provides a mechanism by which a party to a contract containing an arbitration clause, who desires arbitration of a dispute, "may apply to the trial court . . . for an order *directing the parties to proceed* with arbitration." (Emphasis in original.) *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 768, 613 A.2d 1320 (1992).

"[I]n granting or denying an order directing the parties to proceed with arbitration under § 52-410, the trial court must determine whether the contract between the parties provides for arbitration." Id., 768–69. Once that determination is made, however, the statute requires that the trial court "either grant the order or deny the application according to the rights of the parties." General Statutes § 52-410.

Here, the trial court did just that: it granted the order to proceed with arbitration. The trial court went further, however, and granted a stay of the claims ruled arbitrable until the completion of the judicial proceedings of the nonarbitrable claims. Nothing in the plain language of the statute authorizes the trial court to do

---

[9] The trial court, recognizing this, stated in a footnote that "[t]he parties appear to have forgotten that the cash management account agreement between the [city] and MLPF & S specifies that it 'shall be governed by and construed in accordance with the laws of the State of New York.' No analysis of New York law has been offered to the court."

more than grant the order or deny the application. In fact, staying the arbitration is contrary to the intent of the legislature in enacting the arbitration statutes. The language of § 52-410 "demonstrates that the legislature, like the courts, favor[s] arbitration as a means of settling differences and expediting the resolution of disputes." (Internal quotation marks omitted.) *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 346, 494 A.2d 606, cert. denied, 197 Conn. 806, 499 A.2d 57 (1985). Thus, the decision by the trial court to stay the arbitration until the completion of the judicial proceeding of the nonarbitrable claims exceeded the trial court's statutory authority.

That portion of the judgment staying the arbitration until the nonarbitrable claims are resolved is vacated.

In this opinion the other judges concurred.